Good morning, Your Honors. May it please the Court, Judah Lakin on behalf of Petitioner, along with my co-counsel, Mark Vanderhaut. I'd like to note the presence of Petitioner, who along with his U.S. citizen wife is seated in the audience. His U.S. citizen daughter would have been here, but she is in school. I'd like to reserve three minutes for rebuttal. Petitioner comes before this Court and requests that Your Honors grant his petition for review and remand with instructions to reopen his proceedings so at long last his claims for withholding of removal and protection under the Convention Against Torture can be properly considered. Although this case is somewhat factually and procedurally complex, I would submit that the legal issues before this Court are actually quite simple. As Respondent concedes in his answering brief, this case really comes down to the proper interpretation of Al Harbi on Petitioner's withholding claim and the regulations governing CAT as to his CAT claim. If Petitioner is correct on either count, this Court must remand with instructions to reopen, as the evidence is clear that he may have been granted withholding or CAT had the agency. Let me make sure I understand the procedural posture of the case. Sure. So we're up here on a petition for review of the last motion to reopen. Correct, Justice. Is that right? And the argument here is that in denying the most recent motion to reopen, the BIA in exercising its sua sponte authority misapplied the law. That's half the argument, but the actual main claim is an IAC claim. It's not sua sponte. Right. No, but I mean the third motion to reopen or the second motion to reopen was untimely, right? The third motion to reopen, which you're reviewing, was untimely. But that's based on IAC and merits equitable tolling. Sua sponte was an alternative argument that we made. Okay. All right. There wasn't a motion to invoke sua sponte. It was a motion to reopen. It was a motion to reopen based on ineffective assistance of counsel and in the alternative sua sponte. That was in the alternative. You don't need sua sponte to be here. Correct, and I actually think the legal arguments are exactly the same. So if we were to win on one, we would win on the other. Right, because under our case law, if they miss in exercising their sua sponte authority, it's clear that they misapplied the background law here. Right. I think under Bonilla, that's clear. Right. Okay. So the question then is whether or not ARBE applies in this situation. Is that right? Yes, I think that's correct, as does withholding claim, although I think there is a separate claim just purely under the CAT regulations that he should win under that as well. All right. Okay. Okay. So I think there are three important points, and I'll take each one in turn. So, number one, if the court were to deny Mr. Sluisar's petition for review, it would mean sanctioning the removal of an individual to a country to which he fears persecution and torture, even though those claims for withholding of removal and protection under the CAT have never properly been considered by the agency nor the court. Not once. During his removal proceedings, the agency completely failed to consider the evidence before it and simply denied those protections based on the fact that a determined petitioner had filed a frivolous asylum application. Despite letters from fellow activists confirming the persecution of Mr. Sluisar on account of his political opinion, medical certificates corroborating that abuse, a letter from his mother establishing the government of Belarus was still looking for him, and two country reports detailing the repressive tactics of the Belarusian police and government, the agency simply chose to focus exclusively on petitioner's testimony and ignore everything else. Similarly, in denying his motion to reopen, which is currently on review, the agency ignored declarations from fellow activists and family members, as well as a plethora of articles and reports that discuss the repressive and violent regime in Belarus and specifically how political dissidents like Petitioner are treated. As a result, not once has this agency considered the myriad and varied evidence that supports Mr. Sluisar's claims for withholding of removal and protection under the Convention Against Torture. Second point. Petitioner's case is squarely controlled by Al-Harbi, by Zahedi, by Farah, by Wang, and the consistent law of this circuit. The law is clear. Even where a petitioner's testimony is deemed not credible, the agency must take another step and consider the evidence in the record to determine whether Petitioner has met his burden. Nonetheless, in an attempt to abdicate its duty, the board tries to distinguish Al-Harbi on two different grounds, both of which fall flat. First, the board— Or should we focus only on the materials that were submitted originally? Yes, Your Honor. You should focus on both, and this is part of the problem with the board's decision. The board misconstrued Petitioner's claim. Petitioner brought a two-pronged IAC claim. In part, Petitioner said the agency failed to consider the evidence and counsel was ineffective for failing to point that out under Al-Harbi and other case law. That was half of the argument. The other argument was given that Petitioner had a high burden and needed to show other evidence because his testimony was not credible, counsel was not competent in failing to provide a bunch of other evidence, which we submitted under motion. But at least as an argumentative point, you think what you submitted the first time, the medical records and the fellow students, would be enough. That is, we don't have to decide that second part in order to bring you under Al-Harbi under your argument. That's correct. I think we could win alone on the original evidence, but I think the case is even stronger on all of the additional evidence that the board outright ignored in the motion to reopen. So the main way in which the board attempts to distinguish Al-Harbi is by saying that Petitioner suffers from a frivolous finding that has far-reaching effects and requires a different analysis as opposed to an adverse credibility finding. But far-reaching effects are of no moment here. Petitioner seeks only the relief for which he is eligible, withholding and CAT. Whether it's an adverse credibility finding or a frivolous finding, the same is true. You can't use Petitioner's testimony, but that doesn't discount all of the other evidence. The second way in which the board attempts to distinguish Al-Harbi is based on a factual distinction, that the evidence in Al-Harbi was different in kind from that submitted by Petitioner. But this sort of analysis misses the point. Al-Harbi holds, like all cases in this circuit, you can meet your burden by showing credible, direct and specific evidence. It doesn't circumscribe the type of evidence that you have to provide. Here, as I already discussed, he provided a plethora of evidence from other people that established his claim. I see that I have roughly three minutes left, so I'd like to reserve the rest for Robyn. Okay. That's fine. We'll hear from the government. Good morning. May it please the Court, Sarah Bird on behalf of the government. This Court should deny the petition for review because the board did not abuse its discretion in denying the third motion to reopen, which is the one that's before this Court currently. This Court has already previously considered the underlying merits application and the first motion to reopen. Those were consolidated in a petition for review before this Court. Those decisions were not the result of ineffective assistance of counsel or error by the agency. There was no failure to apply Al-Harbi. And that's, as you pointed out, what this case really turns on. In Al-Harbi, this Court said that where there is an independent basis for a withholding and CAC claim that notwithstanding adverse credibility as to the past persecution, that none of that could be believed. The testimony as to past persecution is off the table. But there was independent, undisputed evidence that the person might end up getting tortured. Well, is there anything – where in the record does it show that the agency considered the non-testimonial evidence? Well, the essential difference here is that the evidence he wants considered is not independent. It doesn't give a separate basis. So the agency did consider it. The immigration judge's first decision mentions in the summary of the evidence that these letters were submitted. So when you – let me back up just a minute. When you're talking about independent evidence, what do you mean? What I mean is that – It can't be associated with the Petitioner? That it's not trying to establish the exact same factual claims that the agency has just found are false. So when the agency found that his declaration detailing these four incidents of political persecution and his political activism were – was adverse credibility and, as the Board points out, a frivolous finding, which goes a step further than Those factual allegations are the exact same factual allegations that are in the letters that he wants the agency to consider. But the agency already considered those facts and already found that they were deliberately false, so there's nothing left. I thought the facts they found deliberately false were this one beating and then who had helped him with his application. And neither of those sounds as though it is contradicted by the medical record – I mean, that it contradicts the medical records or the statements of the two students. That's exactly what he argued in his appeal to the Board back in 2007. He said, you know, the only – this adverse credibility only goes to the inconsistencies as to the preparation and this one incident. And the Board addressed that argument and said – this is on 1404 – said, no, it's not just that one incident. The immigration judge had used the one incident with the university rector as an example, but the deliberate fabrications and the plagiarism actually went through the entire declaration, and the Board – But, again, that's his declaration. That's not the declarations of the students or the medical records. That's true, but it's the exact same factual premise. So there were three additional incidents of persecution in 2002 and 2003, and the Board addressed each of those back in the decision that is not under review, the decision this Court has already upheld and said those are also part of the deliberately fabricated false information, and having found that those were false, it would be almost silly to then say and to then separately consider the letters, because you couldn't say that the letters were credible when they were making the same factual claims that you had just found were false. And his attorneys in his prior cases, his prior attorneys, raised the letters as for what they were, corroboration of what the agency had already found was false, and this Court could have considered those claims in finding perhaps that substantial evidence didn't support the adverse credibility determination. That's what those letters went to, is whether or not those prior incidents actually happened or not. But Allherbie was different, because in Allherbie there was an undisputed separate claim that the adverse credibility determination didn't even touch. And that's true in Camalthus and Hussani, too, the kind of three cases that are. Roberts. You mean the Catt claim? Right. There was a Catt claim entirely separate from what had been discredited. So in Allherbie they said, well, we don't know whether he was ever a political dissident, because there's an adverse credibility finding, but we do know, it's undisputed, that U.S. government evacuated him. And because the U.S. government did that, he's going to be potentially grouped with this group of evacuees, and separate of whether he ever did anything in the past that was politically active, he will face this future harm, and remanded on that basis. It was similar in Camalthus. Even if he had never been active and experienced the past persecution as in his political case, his ethnicity was undisputed. He was Tamil. So is it your position, or do you read Allherbie to hold that it only applies, that the agency is only required to consider non-testimonial evidence that's been discredited? Or testimonial evidence, apart from testimonial evidence that's been discredited, where it's similar in nature to the documentary evidence that was presented in Allherbie? Is that the way you read it? No, I don't think, if I understand your question correctly, I don't think it's limited to a certain type of documentary evidence. So it's, I don't read the agency's decision as saying only if it's newspaper articles, but letters aren't enough. The question is whether the facts alleged are of the nature, of the credible nature. So what Allherbie doesn't, Allherbie's. But, you know, for example, here he has medical records as well. Right. But the board dealt with those not by saying that that was medical records could never establish a claim, but said his medical records show that he had a concussion and bruising, but they don't show why he had a concussion and bruising. You know, you can get that. That's somewhat consistent with his test, with his story. Well, it's, it could be, but that was for this court to previously consider whether those medical records were sufficient to overturn the adverse credibility and frivolous finding. The court has already affirmed those, and the agency already found that that October incident didn't, those beatings weren't what caused the injuries. So the fact that he had medical records isn't enough on its own, independent. And that's the big difference is whether. So just to stop you there for a second, you read the original BIA, IJ and BIA decisions as affirmatively finding that any injuries were not the result of activism or beatings? They affirmatively found that the specific incident, I believe it was the October 3rd, 2003 incident that he claimed gave rise to those medical records was false. There were two separate set of medical records. That's true. And they addressed, they found that both of the incidents that he claimed were false. And so they didn't separately address the medical records, but they did find that he did not experience those beatings. Do you have a page site for what part of the record we would find that from? You're talking about the 2007 BIA decision? That's right. That's what I'm talking about, where he argued that, and I think I already gave that 1404. 1404. Okay. He had argued in his appeal, let's see, I have it on 1452 and 1268. That was by his prior attorney. He had mentioned these incidents and said, you know, all of these incidents happen. Only one of them has been discredited. And the board specifically said, no, all of them are discredited. And you can also look at the asylum officer's, you know, initial summary. And I cited these also in the response to the 28J letter. So in the reason this case is different is because there isn't a separate and disputed basis for his cat claim. In that case, all her be would have been triggered, and notwithstanding even a frivolous finding, he could have proceeded on this separate independent basis. But here, the basis for his cat claim is the exact same factual basis that the board and this court already found to be false. And that goes along the lines of how this court previously interpreted all her be and Camathus and Farah versus Ashcroft. It's in 2003, that an adverse credibility finding in an asylum case is sufficient to deny a cat claim when the cat claim is based on the same premise that was already found not credible. And this court has continued to apply that rule in Singh in 2015 and Wang in 2017. Those cases are all cited in our brief. And I see I'm out of time. Thank you. Roberts. Rebuttal. So a few points, Your Honors. First, I think as a legal matter, the frivolous, the way that my friend described the frivolous finding isn't quite right, right? Like what a frivolous finding means is that you made up one thing. That's all that's required to find a frivolous finding. I don't think that the record bears out the way that you described. My reading of the record was that they weren't sure what to make of his claim and they found him not credible and then made a frivolous finding based on the fact that he had clearly lied about who had prepared his applications in this other incident that Judge Boggs referred to. None of the other evidence repeats that information. So there's nothing refuting the other information in the record. I also think Alharbi itself forecloses respondents' arguments. And actually, prior to that, the argument about the fact that you can't use the evidence going to the same pieces, like the past persecution claim, that was not made by the Board. So this Court could not affirm on that ground, even if it wanted to. But it's also that argument is foreclosed by Alharbi. Alharbi itself looks at the past persecution claim. It says, with respect to Petitioner's claim of past persecution based on the alleged 1992 police interrogation, apart from Petitioner's testimony in I-589 form, there is no evidence that the interrogation took place at all. Thus, the adverse credibility determination is fatal to this claim. And then it does the same thing with his other past persecution claim. It doesn't say, we don't even need to look at that. We're only going to analyze the future persecution claim. It's the same in Zahedi. Zahedi does essentially what Respondent is urging this Court to do. Zahedi submitted documents that corroborated testimony that was found not credible. And the Court went through and evaluated each of the documents and said, well, actually, this objectively establishes what was previously found not credible. An adverse credibility finding and a frivolous finding do not mean that every single thing that was said was false. It just means that we don't trust what the Petitioner had to say and we can't use it. But the case law is consistent. It goes through and it always, always looks at the previous evidence and says. And FARA is also, FARA supports us. In FARA, the IJ and the BIA had considered all of the evidence and rejected it. It said, we don't find this other evidence credible. So the quote that Respondent read from, it's a little misleading. The only reason they could not reconsider the CAC claim was because all of the evidence had already been considered. But here the evidence hasn't been considered. And I would just add that the evidence here has plenty of indicia of reliability. It has stamps on the medical records. There are legal documents attached to the declarations. And all of the country reports support what the declarations say. So in closing, I would just urge that this court grant the petition for review and remand with instructions to reopen. Thank you. Okay. Thank you. Thank you, Counsel. We appreciate your argument. Safe travels back east. The matter is submitted at this time.
judges: Boggs, Paez, Owens